SCOTT ERIK ASPHAUG, OSB # 833674
Acting United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:21-MJ-00229 |
| v. | GOVERNMENT'S MOTION FOR PRETRIAL DETENTION |
| RICO ANTHONY RUSSELL RIGUTTO, | |
| Defendant. | |

The United States of America, through Scott Erik Asphaug, Acting United States Attorney for the District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court to continue the defendant's detention pending trial as both a risk of non-appearance and as a danger to the community.

**A.      Factual and Procedural Summary.**

On December 14, 2021, defendant was charged in a federal Criminal Complaint with Possession with Intent to Distribute a Controlled Substance and Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846; Unlawful Possession of a

**Government's Motion for Pretrial Detention**                                                                   1

Machinegun, in violation of 18 U.S.C. § 922(o); and, Possession of a Machinegun in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). A conviction on either of the current drug offenses, as charged in the criminal complaint, carries a maximum sentence of 20 years' imprisonment and a three-year term of supervised release. The Unlawful Possession of a Machinegun charge carries a maximum term of up to 10 years' imprisonment and a three-year term of supervised release. The Possession of a Machinegun in Furtherance of a Drug Trafficking Crime carries a maximum term of Life imprisonment and a mandatory minimum of 30 years' imprisonment. Based upon the quantity of drugs found during a subsequent search warrant at the defendant's residence, the government anticipates seeking an indictment from the grand jury on additional drug charges that would carry maximum terms of Life imprisonment and mandatory minimums of 10 years imprisonment.

On December 14, 2021, law enforcement officials with the Salem Police Department's Special Investigations Unit and FBI Task Force Officers used a cooperating defendant to arrange the purchase of a quantity of counterfeit oxycodone (M30) pills from the defendant. These counterfeit oxycodone pills are almost always made with fentanyl. The deal was to occur in Salem, Oregon. As part of the operation, the defendant was pulled over in Salem, Oregon and arrested. Inside his vehicle, on the rear passenger side floorboard, law enforcement officials found and seized a large bag containing approximately 3,000 counterfeit oxycodone pills. One of these pills was later subject to a chemical field test which revealed the presence of fentanyl.

In the center console of the car officers also found a loaded Glock 30S .45 automatic handgun affixed with an aftermarket select fire switch on the slide, also referred to as a "Glock Switch" or "Glock Auto Sear." This switch converts the semi-automatic Glock firearm into a fully automatic firearm causing the Glock pistol to shoot, be designed to shoot, and be readily

restored to shoot automatically more than one shot, without manually reloading, by a single function of the trigger. Under federal law the recovered Glock handgun has been converted into a machinegun. There was a round in the chamber of the gun and the gun had an extended magazine containing 31 rounds of ammunition. The pills and firearm found in the vehicle are pictured below.





Following his arrest, law enforcement officials requested and received federal search warrants to search the defendant's residence and the premises at 2130 Crozer Street Northwest,

**Government's Motion for Pretrial Detention**

Salem, Oregon, as well as two vehicles that were on the premises. Just prior to 10:00 P.M., officers executed those search warrants. As a result of those search warrants, in various safes, officers seized approximately 28 pounds of methamphetamine; six (6) pounds of heroin; approximately 20,000 additional counterfeit oxycodone pills, believed to be made with fentanyl; approximately $100,000 in cash; and, 15 additional firearms, one of which was another Glock handgun with a conversion switch making it into a machinegun. The additional items found as a result of the search warrants are pictured below.



**Government's Motion for Pretrial Detention**                                                                  **Page 4**

On December 15, 2021, the defendant made his initial appearance in federal court on the criminal complaint and was detained as both a danger to the community and risk of nonappearance. That order was entered without prejudice to the defendant and a detention hearing and preliminary hearing have been scheduled for December 21, 2021. An arraignment is scheduled for January 14, 2021.

The government seeks the defendant's continued detention as a danger to the community and a risk of nonappearance.

**B.     Applicable Law.**

    **1.     Rules of Evidence Do Not Apply at Detention Hearing**

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

    **2.     Rebuttable Presumption of Detention**

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10

years or more, the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3). In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). The defendant's criminal complaint in this case creates such a presumption of detention.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant *might* engage in criminal activity to the detriment of the community. The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence. This principal was recently endorsed in *United States v. Provenzano and Andretta*, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union. *The committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'*

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no condition or combination of conditions of release that will reasonably assure the appearance of drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and dangerous federal offenses. The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus,

> because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989). Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir.1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id*. Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

///

**Government's Motion for Pretrial Detention**                                             **Page 7**

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

**C.  Factors Supporting Detention.**

The defendant should be detained pending trial as both a danger to the community and a risk of nonappearance.  The defendant is a significant and armed drug dealer.  The defendant's criminal conduct clearly shows that he is a danger to the public and that he will not abide by the law.  It would be unrealistic to hope he will follow any of the Court's future orders.

**1.  Nature and Circumstances of the Offense.**

The defendant possessed substantial quantities of drugs for purposes of further distribution.  He was also an armed drug dealer who possessed 16 firearms, two of which had been converted into machineguns.  The combination of substantial quantities of drugs and guns

makes for a very dangerous, deadly and combustible mix.  He is clearly a danger to the community.

2. **Weight of the Evidence.**

The weight of the evidence against the defendants is extremely strong and supports his continued detention.  The defendant was caught with approximately 3,000 counterfeit pills and a machinegun in his car.  Additionally, law enforcement found approximately 28 pounds of methamphetamine; six (6) pounds of heroin; approximately 20,000 additional counterfeit oxycodone pills, believed to be made with fentanyl; approximately $100,000 in cash; and, 15 additional firearms, one of which was another Glock handgun with a conversion switch making it into a machinegun at the defendant's residence.

3. **History and Characteristics of the Defendant.**

The history and characteristics of the defendant also warrants pretrial detention.  Although the defendant had not yet been caught dealing drugs and he does not have a criminal history, the circumstances of this case demonstrate that he had been operating under the radar as a significant drug dealer for some time.  There are no indications that the defendant has a legitimate job.

4. **Nature and Seriousness of the Danger to the Community.**

The defendant's drug dealing activities and possession of numerous firearms, including two machineguns, is extremely serious.  Given the presumption of detention that comes along with the charges, Congress has recognized the very serious risk that drug dealers pose to the community and their risk of going back to drug dealing even while on pretrial release.  Drug dealing itself poses a significant risk to the community – drugs such as counterfeit pills made with fentanyl, methamphetamine, and heroin are killing large numbers of our fellow citizen – deaths that are being fed by people like the defendant.  Furthermore, the defendant's possession

**Government's Motion for Pretrial Detention**

of firearms adds another level of danger to the mix. A drug dealer possesses firearms as "tools of the trade" to protect themselves, their drugs, and their ill-gotten gains. As a drug dealer, the defendant is a target for those who might want to rob him and this would necessitate him potentially using his firearms to respond to the threat. As a drug dealer, the defendant also has to deal with suppliers and customers who may also be armed and disagreements often arise between these groups resulting in shootings. The combination of drug dealing and possessing firearms in furtherance of drug dealing is a dangerous, deadly, and combustible mixture that threatens the safety of the community. He should be detained.

## Conclusion

For the reasons set forth herein, we respectfully request that the Court continue to detain the defendant pending trial and find he poses an unacceptable risk of non-appearance at future court hearings and that he is a danger to the community. We ask the Court to find that:

- The offenses charged create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendant as required.

- The defendant has not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offense and the extreme dangers posed by the defendant's illegal distribution of drugs, to include significant quantities of counterfeit pills made with fentanyl, heroin, and methamphetamine, as well as his possession of 16 firearms, to include two machineguns, that there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendant were released.

///

///

///

- Due to the weight of the evidence and the defendant's personal history and characteristics, including the potential penalties he is facing on the current charges, no condition or combination of conditions will reasonably assure the appearance of the defendant at future court hearings as required if released from custody.

Dated: December 15, 2021.

Respectfully submitted,

SCOTT ERIK ASPHAUG
Acting United States Attorney

/s/ *Scott Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney